## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHERYL ANN COLTER**, | Case No. 3:14-cv-00896-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of the Social Security Administration, | |
| Defendant. | |

Nancy J. Meserow, 7540 S.W. 51st Avenue, Portland, OR 97219. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Jordan D. Goddard, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Cheryl Ann Colter seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") under Title XVI and disability insurance benefits under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is reversed and this matter is remanded for the calculation and payment of benefits.

# BACKGROUND

## A. The Application

Ms. Colter filed applications for benefits on December 29, 2011, alleging disability beginning on October 24, 2004. Tr. 290. She alleged disability due to "severe depression, memory problems, and right shoulder-rotator cuff" issues. Tr. 295. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 128-41; 145-60; 11. An administrative hearing was held on November 25, 2013. On December 31, 2013, the ALJ found Ms. Colter not disabled. Tr. 12-32. The Appeals Council denied Ms. Colter's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-7. Ms. Colter now seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (disability insurance benefits), 416.920 (supplemental security income); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(I). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

        §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

      The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

OPINION AND ORDER, Page 3

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ applied the sequential process. Tr. 17-26. At step one, the ALJ found Ms. Colter had engaged in substantial gainful activity from the alleged onset date of October 24, 2004 until February 9, 2010.[1] Tr. 17. The ALJ found Ms. Colter met the insured-status requirement of the Social Security Act through June 30, 2015. At step two, the ALJ found that Ms. Colter's depression, anxiety, chronic obstructive pulmonary disease (shortness of breath), narcotic abuse and dependence, and right shoulder issues were severe impairments. *Id.* At step three, the ALJ found that Ms. Colter did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 19.

---

[1] Ms. Colter initially alleged her conditions became disabling in October 2004. She now seeks to amend her disability onset date to February 9, 2010, the date she was fired from Umpqua Bank. The Commissioner objects to the amendment. Ms. Colter offers no authority for the proposition that this Court may amend her disability onset date, and her request is denied.

OPINION AND ORDER, Page 4

The ALJ determined that from the date on which Ms. Colter stopped working through the date of the decision, Ms. Colter had the RFC to perform medium work with the following restrictions: she can lift 50 pounds occasionally, lift and carry 25 pounds occasionally, balance frequently, climb stairs and ramps occasionally, stoop, kneel and crouch occasionally, and push, pull, and reach overhead with the right upper extremity occasionally; she can never crawl and never climb ladders, ropes, or scaffolds; she must avoid more than occasional exposure to extreme cold, extreme heat, vibration, and irritants such as fumes, odors, dust, gases, chemicals, and poorly ventilated spaces; she is fully capable of learning, remembering, and performing simple, routine, and repetitive work tasks, involving simple work instructions, which are performed in a routine, predictable, and low stress work environment (defined as one in which there is a regular production pace, few work place changes, and no "over the shoulder" supervision); and she may have occasional contact with supervisors, co-workers, and the public. Tr. 20. In reaching his conclusion, the ALJ considered Ms. Colter's testimony, but found her not fully credible. Tr. 22.

At step four, the ALJ found Ms. Colter was not able to perform her past relevant work as a bookkeeper. Tr. 25. At step five, the ALJ found Ms. Colter retained the RFC to perform occupations including kitchen helper, hand packager, and lab helper. Tr. 26.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is free of legal error and its findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

OPINION AND ORDER, Page 5

*Id.* (quoting *Andrews*, 53 F.3d at 1039). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In reviewing the Commissioner's decision, the Court "must consider the entire record as a whole." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted). The Court may not affirm the Commissioner "simply by isolating a specific quantum of supporting evidence"; nor may the Court affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.* (quotation marks omitted); *see also Bray*, 554 F.3d at 1226. But as long as "the agency's path may reasonably be discerned," the Court must affirm the agency's decision, even though the agency may have explained it with "less than ideal clarity." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).

## DISCUSSION

Ms. Colter seeks review of the ALJ's determination that she was not disabled from February 9, 2010 through December 31, 2013. She argues the ALJ erred by (1) finding her less than fully credible; (2) failing to find cholecystectomy syndrome, spondylosis, osteoarthritis, and sacroiliitis to be severe impairments at step two; (3) improperly weighing medical evidence; (4) failing to assess an accurate RFC; and (5) relying on the VE testimony.

### A. Credibility

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th

Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility

OPINION AND ORDER, Page 7

finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

The ALJ found Ms. Colter less than fully credible based on her activities of daily living, her work history, and her narcotic-seeking behavior. Tr. 22. Ms. Colter testified that she lost her job in February 2010 because depression due to her son's death caused her to miss work—but she started that job in 2006, two years after her son's death. Ms. Colter testified that she did not apply for work while receiving unemployment benefits, then admitted that she had applied for at least one position. The ALJ also cited multiple instances of what can reasonably be construed as drug-seeking behavior. Tr. 22-23. That behavior and the inconsistencies in Ms. Colter's testimony about her work history are clear and convincing reasons to find Ms. Colter less than fully credible. The ALJ's credibility determination is, therefore, supported by substantial evidence.

## B. Step Two—Severe Impairments

At step two, the claimant bears the burden to show the existence of a severe impairment or combination of impairments—medically determinable conditions that have more than a minimal effect on the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Tackett*, 180 F.3d at 1099; *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and

laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 C.F.R. § 404.1508.

The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 404.1521(b). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert*, 482 U.S. at 153-54.

Plaintiff contends the ALJ erred by failing to find at step two that her cholecystectomy syndrome, chronic low back pain, and left hip sacroiliitis were severe.

**1. Cholecystectomy Syndrome**

In 2002, Ms. Colter had a laparoscopic cholecystectomy. Tr. 451. About one year later she had a gallstone surgically excised. On July 7, 2008, Ms. Colter reported to Franklyn Dornfest, M.D., that she had had "3-4 episodes of her epigastric 'gall bladder' attacks" lasting for five to ten minutes each. Tr. 372. An abdominal ultrasound was negative for choledocholithiasis. Tr. 373. She was prescribed hydrocodone-acetaminophen.

On July 3, 2009, Ms. Colter was seen by Susan Orloff, M.D., for a hepatobiliary consultation. Tr. 451. Ms. Colter described chronic right upper quadrant pain and "'gallbladder attacks' about every one to two weeks that last about one minute." *Id.* The attacks were not

OPINION AND ORDER, Page 9

associated with food or activity, and sometimes they woke her. She was on vicodin and tramadol. There was mild tenderness in the right upper quadrant. Tr. 453. A CT scan of the abdomen and laboratory results were normal. Tr. 454.

On December 9, 2009, Ms. Colter was examined by Sarah A. Rodriguez, M.D. Tr. 431. Ms. Colter described "fairly constant right upper quadrant and epigastric pain" that was "always present, sometimes better and sometimes worse." *Id.* Her abdomen was not tender and a CT scan and ultrasounds from 2008 were both normal. Dr. Rodriguez concluded that "[t]he only GI tract pathology that would be possible with this history is chronic pancreatitis not picked up on cross-sectional imaging. Alternatively, this may be musculoskeletal, as she does report exacerbation of pain with movement and lifting." Tr. 433. Dr. Rodriguez recommended exercise and tapering off narcotics.

On March 21, 2012, Ms. Colter reported gallbladder pain one or two times per month since her gallbladder was removed, with a "pulling sensation" occasionally after a fatty meal. Tr. 955. Tramadol was prescribed. Dr. Allers noted some tenderness in the right upper quadrant. On March 28, 2012, Ms. Colter reported upper right quadrant abdominal pain and pulling "about 1 or 2 times per month which lasts for 10 sec[onds]" since her cholecystectomy. Tr. 954.

On May 16, 2012, Ms. Colter reported "vague [right] upper quad[rant] pain intermittently, sensation of tearing. Pain limits ability to walk." Tr. 953. On June 20, Ms. Colter reported pain occurring "almost weekly." Tr. 952. A CT scan of the abdomen on July 16, 2012, showed "mild intra- and extra-hepatic biliary dilation, similar to CT scan from 10/13/2008." Tr. 960. On July 23, 2012, Ms. Colter reported "cont[inuing] to have pain in r[ight] u[pper] q[uadrant]," that she "uses ibu[profen] daily ('wh[ich] doesn't help')," and that she "gets pain when walking on occasion and awakens her from sleep, crippling when it occurs." Tr. 949. Dr. Allers diagnosed

OPINION AND ORDER, Page 10

postcholecystectomy syndrome, stating "unclear what this is but is chronic and has not changed for years, [tramadol] helps." *Id.*

The ALJ noted Ms. Colter's complaints of abdominal pain, the reports of Dr. Orloff and Dr. Rodriguez, and found that this gastrointestinal impairment did not cause lasting functional impairment. As the ALJ correctly observed, "there is nothing to show that [Ms. Colter's gastrointestinal pain symptoms] are more than transient or cause significant vocational limitations." Tr. 18. Ms. Colter's intermittent gastrointestinal pain has "no more than a minimal effect on [her] ability to work." *See Yuckert*, 841 F.2d at 306. The ALJ's determination on this issue is therefore supported by substantial evidence.

### 2. Chronic Low Back Pain

Ms. Colter reported back pain on July 2, 2012. Tr. 950. On August 11, 2012, she was seen in the emergency room reporting back pain between her shoulder blades for one month. Tr. 908. She had "minimal tenderness to palpation over right thoracic paraspinal muscles, with visible spasm." Tr. 909. Her range of motion in her neck and back were normal. *Id.*

On January 31, 2013, Ms. Colter was seen in the emergency room for left lumbar pain after a fall. Tr. 910. There was no tenderness on palpation and normal range of motion. Tr. 912. On March 6, 2013, she was seen in the emergency room with thoracic back pain after a fall. Tr. 913. Examination showed mild tenderness of the right tibial tuberosity, and there was muscular tenderness and firmness consistent with mild spasm medial to the right scapula. Tr. 914. Flexeril and ibuprofen were prescribed.

On May 29, 2013, Ms. Colter reported shoulder, hip, and chest pain and walked with a slight limp. Tr. 939. On June 19, 2013, Ms. Colter reported low-back pain when walking and getting out of bed, and occasional paresthesia in the foot. Tr. 938.

OPINION AND ORDER, Page 11

On October 21, 2013, x-rays of the lumbar spine showed "some mild disc space narrowing predominantly at the L3-4 through L5-S1 levels. There is facet arthropathy especially on the right at the L5-S1 level." Tr. 926. The radiologist's impression was "[n]o acute osseous pathology." *Id.*

On October 29, 2013, an MRI of the lumbar spine showed lower lumbar facet osteoarthritis, with mild degenerative hypertrophy most pronounced on the right at L4-5 and L5-S1. Tr. 926. The radiologist's impression was "L4-5 mild spondylosis, with a left posterolateral disc bulge that mildly deflects the peripheral foraminal component of left L4 nerve root and slightly deflects the traversing left L5 nerve root in the lateral aspect of the central canal." Tr. 927. There was "[n]o sign of frank neural compression." *Id.* The MRI showed "L3-4 mild spondylosis with deflection of the peripheral foraminal component of the left L3 nerve root by a far lateral bulge." *Id.* There was "[m]ild lower lumbar facet osteoarthritis, more pronounced on the right." *Id.*

The Commissioner points out that radiologist Ben Jacobson, M.D., described all of the abnormalities in Ms. Colter's back as "mild" or "minimal." *See* Tr. 926-27. Mild impairments are properly found "not severe" at step two. *Ball v. Massanari*, 254 F.3d 817, 822 (9th Cir. 2001). Although a medical determination of mildness rests on different criteria than an administrative determination of mildness, a medically mild impairment is unlikely to have more than a minimal effect on an individual's ability to work. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (discussing analogous issues in the ultimate question of disability). Accordingly, the ALJ's determination that Ms. Colter's chronic low back pain is not a severe impairment is supported by substantial evidence.

### 3. Sacroiliitis

In September 2013, Ms. Colter was seen in the emergency room for left hip pain for the prior six months. Tr. 921. There was tenderness to palpation and limited range of motion. An

OPINION AND ORDER, Page 12

October 29, 2013, MRI of the pelvis showed localized fluid along the lateral aspect of the left greater trochanter "which could be related to . . . prior injury or . . . to gluteal tendinosis." Tr. 927. The MRI showed a partial-thickness tearing of the hamstring tendon. The radiologist concluded there was no acute osseous pathology. Tr. 928.

Although Ms. Colter presented sufficient evidence of a medically determinable impairment in her hip, there was no evidence that that impairment affected her ability to work. Accordingly, the ALJ's determination that Ms. Colter's sacroiliitis is not a severe impairment is supported by substantial evidence.

## C. Medical Evidence

An ALJ may properly reject a treating physician's uncontradicted medical opinion only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). When the treating physician's opinion has been contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. Kay Stradinger, Psy.D.

Dr. Stradinger examined Ms. Colter on December 13, 2010. Tr. 596-601. Ms. Colter complained to Dr. Stradinger regarding her concentration and memory, stating that she "had not gotten over [her] son's death." Tr. 596. Ms. Colter reported that she sits and stares, forgets her passwords, and forgets that she is going to the grocery store. *Id.* She told Dr. Stradinger this happens every day. Ms. Colter stated she had been deeply depressed since 2004, would stay in bed

with decreased appetite, and slept only two to three hours a night. Tr. 597. She was at the time taking Fluoxetine, Bupropion, Risperidone, Clonazepam, Hydrocodone, and Temazepam.

Dr. Stradinger noted that "[t]he claimant had somewhat of a difficult time concentrating today. Her persistence was adequate and the pace was generally average." Tr. 598. Dr. Stradinger wrote that Ms. Colter "was generally cooperative, but seemed to be somewhat removed in her concentration. . . . She did appear to be somewhat sluggish, perhaps related to substances or perhaps she is in a state of derealization or depersonalization." Tr. 598-99. Dr. Stradinger stated the "claimant is focused on her son's death." Tr. 599. On memory testing, Ms. Colter's performance was below average, as was her fund of knowledge, information, and concentration. Tr. 599-600. Dr. Stradinger diagnosed chronic adjustment disorder with depressed mood and benzodiazepine and opiate dependence. Tr. 600. Dr. Stradinger assessed a GAF of 50.

Dr. Stradinger thought Ms. Colter was "unlikely" to recover. Tr. 601. She concluded that Ms. Colter is "capable, cognitively of performing simple and repetitive work type tasks," but "would have a difficult time interacting independently, effectively, appropriately and on a sustained basis, with supervisors, co-workers and the public . . . . She seems to have problems with social functioning, as well as concentration and attention." *Id.*

The ALJ noted Dr. Stradinger's opinion and gave it "some weight" "regarding the claimant's ability to perform simple tasks" as consistent with other evidence. Tr. 24. The ALJ gave the GAF rating little weight as "inconsistent with the claimant's daily activities and her ability to work for free housing." *Id.* Dr. Allers noted on October 9, 2013, that Ms. Colter "has free housing in hotel for working there." Tr. 935. In December 2012, however, Dr. Allers noted that Ms. Colter was "homeless," writing that her "son pays for [motel] charges with day lab[or]." Tr. 943. Consistent with this latter observation, in April 2013, Dr. Allers noted that Ms. Colter lived at the

OPINION AND ORDER, Page 14

Beaverton Budget Hotel with her son and that her "son works in security as needed." Tr. 942. Similarly, at the hearing, Ms. Colter testified that she lived with her son, who received a free room for working at the hotel. Tr. 45-46, 57.

With the exception of a single sentence fragment of ambiguous meaning, all relevant evidence in the record indicates that Ms. Colter does not, in fact, work for free housing. The ALJ could not, therefore, reject Dr. Stradinger's opinion on that basis. Nor could the ALJ permissibly rely on the fact that Ms. Colter was not "utterly incapacitated," but could perform minimal activities of daily living. *See Vertigan v. halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Therefore, the ALJ's rejection of Dr. Stradinger's opinion was not supported by clear, convincing, specific, and legitimate reasons.

### 2. Gregory L. Allers, D.O.

On October 21, 2013, Dr. Allers completed a form prepared by counsel in which he stated that Ms. Colter had been a patient in his clinic for four years and under his direct care for two years. Dr. Allers listed Ms. Colter's medical conditions as depression, COPD, hypertension, history of chronic homelessness, grief, and chronic pain in the shoulder and lower back. Tr. 901. Dr. Allers wrote her primary symptoms were poor energy, poor memory, poor concentration, poor sleep, and poor motivation. *Id.* The doctor opined that Ms. Colter could frequently lift/carry five to ten pounds, and stand or walk one hour at a time for a total of two to three hours in an eight-hour day. Tr. 901-02. Dr. Allers stated Ms. Colter could sit for one hour at a time and for five hours in an eight hour day. He described limitations in her ability to use her right upper extremity. Dr. Allers opined that Ms. Colter had markedly impaired concentration, and her symptoms would interfere with her ability to sustain simple work tasks. Tr. 904. Dr. Allers thought Ms. Colter's

concentration would be impaired more than 20 percent of the time. *Id.* Treatment had not improved her depression.

The ALJ gave Dr. Allers's opinion "little weight." Tr. 24. "It appears to be based on subjective statements," the ALJ held, because "treating evidence shows minimal limitations caused by physical problems." Tr. 24. This is not a valid reason to discredit Dr. Allers's opinion regarding Ms. Colter's mental ability to sustain concentration and other mental symptoms, particularly when those opinions are directly corroborated by the opinion of Dr. Stradinger as described above.

The ALJ said Dr. Allers's opinion was not credible because he quoted Ms. Colter as saying she could not handle workplace stress. *Id.* But Dr. Allers went on to independently assess that Ms. Colter had "[p]oor ability to learn new tasks," and that "time limits and routines [were] too stressful" for her.

The ALJ found that the "objective medical evidence does not show marked restriction on concentration, persistence and pace. . . . [T]here is no support for a 20% reduction in concentration and attention on work tasks." Tr. 24. As the treating physician, however, Dr. Allers is in the best position to assess Ms. Colter's ability to concentrate. Moreover, his medical opinion is fully supported by that of Dr. Stradinger.

Finally, the ALJ rejected Dr. Allers's opinion on the basis that he "did not address the effects of narcotic use." Tr. 24. This not a valid reason to discount Dr. Allers's opinion, however, because by the time of the cited analysis, Ms. Colter's narcotic pain medication had been limited for two years, since October 2011. Tr. 628.

On this record, the ALJ failed to identify clear, convincing, specific and legitimate reasons to reject Dr. Allers's opinion.

OPINION AND ORDER, Page 16

**D. Remand**

The "decision whether to remand for further proceedings or for an award of benefits" is within the Court's discretion under 42 U.S.C. § 405(g). *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). It was recently described by the United States Court of Appeals for the Ninth Circuit:

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled").

The ALJ's failure to credit the examining and treating providers is erroneous for the reasons set out above. The Vocational Expert testified that if Dr. Allers's opinion is credited, there is no work that exists in significant numbers in the national economy that Ms. Colter can perform. Tr. 63-64. Thus, the record has been fully developed and further administrative proceedings would serve no useful purpose: Ms. Colter is disabled. Accordingly, this matter is remanded for the calculation and award of benefits.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. For these reasons, the decision of the Commissioner is reversed and this matter is remanded to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

Dated this 13th day of May, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge